UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                          :

RICHARD SALVATIERRA,
                                          :

               Plaintiff,                        09 Civ. 3722 (SHS) (DF)
                                          :

            -against-                        **REPORT AND**
                                          :       **RECOMMENDATION**

SUPERINTENDENT WILLIAM CONNOLLY,
CORRECTIONAL OFFICER MONTGOMERY,       :
SERGEANT TELESCO,
CORRECTIONAL OFFICER LUJAN,             :
CORRECTIONAL OFFICER CROOM,
CORRECTIONAL OFFICER DAWLEY,       :
DOCTOR MAMIS,
CAPTAIN PELC, and                    :
SENIOR CORRECTIONAL OFFICER C. GOOD,

                                          :

               Defendants.
-----------------------------------------------------------------------X

**TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

       In this *pro se* prisoner's rights action, there are currently two motions pending before the

Court, both seeking to dismiss claims asserted by plaintiff Richard Salvatierra ("Plaintiff") in his

Amended Complaint.  The first of these motions (Dkt. 62) is brought by all named defendants

except Correctional Officer Sean Dawley ("Dawley"), who has only recently appeared in this

case, and Correctional Officer Keith J. Montgomery ("Montgomery"), as to whom the Court

upheld Plaintiff's claims as originally pleaded, and who has now filed an Answer.  (*See*

Defendant's Memorandum of Law in Support of Motion to Dismiss Amended Complaint, dated

Mar. 31, 2011 ("Croom Mem.") (Dkt. 63).)  The defendants other than Dawley and Montgomery

were previously successful on a motion to dismiss Plaintiff's original claims against them, and

they now move again, against his repleaded claims.  In the second motion before the Court

(Dkt. 78), defendant Dawley, who is addressing Plaintiff's claims against him for the first time,

seeks an order dismissing those claims as insufficient under the pleading standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Defendant Dawley's Memorandum of Law in Support of Motion to Dismiss Amended Complaint, dated July 1, 2011 ("Dawley Mem.") (Dkt. 79), at 8-16.)  Dawley also argues that, in any event, he is entitled to sovereign immunity and qualified immunity on the claims against him.  (*See id.*, at 8, 16-17.)

For the reasons discussed below, I recommend that both of the pending motions be granted.

## BACKGROUND

### A.     The Prior Motion To Dismiss

After Plaintiff filed his initial Complaint in this action, all defendants except Dawley, who had not yet been served with process, moved to dismiss the claims against them.  On September 1, 2010, this Court issued a Report and Recommendation (the "9/1/10 R&R" (Dkt. 36)), recommending the dismissal of Plaintiff's claims against all then-appearing defendants except Montgomery, as to whom Plaintiff's claims were facially sufficient.  The Court further recommended, though, that Plaintiff be permitted to replead his claims to cure any defects identified in the Report and Recommendation.  (*See id.*, at 49.)  In particular, as to defendant Correctional Officer Simon Croom ("Croom"), this Court recommended that (a) the motion for dismissal of Plaintiff's claims be converted to a motion for summary judgment, (b) summary judgment be granted on the ground that Plaintiff had not shown that he exhausted his claims against Croom administratively, as required by the Prison Litigation Reform Act ("PLRA"), and (c) Plaintiff be afforded an opportunity to reassert his claims, should he be able to demonstrate "either exhaustion or adequate reasons by exhaustion should be excused." (9/1/10 R&R, at 34.)

2

On January 3, 2011, the Court adopted the Report and Recommendation in its entirety. (Dkt. 51.)

**B.     Plaintiff's Amended Complaint**

On February 17, 2011, Plaintiff filed an Amended Complaint.  (Amended Complaint, dated Feb. 17, 2011 ("Am. Compl.") (Dkt. 58).)  Although, with respect to any demand for monetary relief, Plaintiff specified that he is now seeking damages only from defendants Montgomery and Croom (*see id.*, § V), Plaintiff again named all of the originally-named defendants in the caption of his amended pleading.  When the Court raised this with Plaintiff at a case management conference, Plaintiff clarified that he had not intended to reassert his claims against any defendants other than Montgomery, Croom, and Dawley.  (*See* Transcript of telephone conference held Mar. 15, 2011, at 6-7 ("So if they were dismissed, you know, I'm not making a claim that they're the defendants any longer, 'cause we're only going to stay with Montgomery, Croom, and Dawley.").)

On April 4, 2011, defendant Croom filed a motion to dismiss Plaintiff's Amended Complaint (Dkt. 62), arguing that the allegations of the Amended Complaint showed that Plaintiff still had not, and could not, demonstrate exhaustion of his claims against Croom (*see id.*).  Despite Plaintiff's statements at the March 15 conference, the other defendants whose names again appeared in the caption, but as to whom Plaintiffs' claims had been previously dismissed, joined in Croom's motion.  (*See id.*)  These defendants argue that the claims against them should be stricken because the Court had never granted Plaintiff leave to replead those claims and, in any event, Plaintiff's amended allegations add nothing new as to them.  (*See generally id.*)

3

On July 1, 2011, defendant Dawley, who had finally been served, also moved to dismiss the Amended Complaint. (Dkt. 78.) In his motion, Dawley argues that Plaintiff's claims against him – which are based on allegations that a misbehavior report written by him was false and retaliatory – cannot stand because the report was not actually false, the consequences to Plaintiff were not severe, and Plaintiff has pleaded no facts that could plausibly give rise to an inference of a retaliatory motive.

Plaintiff opposed the motions of both Croom and Dawley, although he did not oppose the application of the additional defendants (defendants Connolly, Telesco, Lujan, Mamis, Pelc, and Goord) to strike any claims against them. (*See generally* Affirmation of [Plaintiff] in Opposition to [D]efendant's Motion to Dismiss Amended Complaint, dated May 20, 2011 ("Pl. Opp. Croom Mtn.") (Dkt. 73); Plaintiff's Response to Defendant Dawley's Motion To Dismiss, dated Dec. 22, 2012 ("Pl. Opp. to Dawley Mtn.") (Dkt. 89).) Both motions have now been fully briefed. (*See* Dkts. 63, 73, 77, 78, 89, 90.)

## DISCUSSION

## I.   MOTION BY CROOM (AND OTHER DEFENDANTS WHO PREVIOUSLY APPEARED) TO DISMISS THE AMENDED COMPLAINT

### A.   Reasserted Claims Against Croom

The Court agrees that Plaintiff's repleaded claims against Croom should again be dismissed for lack of exhaustion. Further, dismissal at this point would be appropriate on the face of Plaintiff's pleading, as Plaintiffs now sets out the facts relevant to exhaustion in his Amended Complaint and the attachments thereto.[1] Although Plaintiff vigorously argues that his

---

[1] As the "failure to exhaust is an affirmative defense under the PLRA, . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007). Nonetheless, "[w]here a motion [to dismiss] is premised on the plaintiff's

allegations are sufficient to demonstrate that he exhausted his claims against Croom or that exhaustion should be excused, neither of these arguments are persuasive.

The principal facts underlying Plaintiff's claims against Croom, as well as the exhaustion requirements necessary to satisfy the PLRA, are set out in some detail in this Court's prior Report and Recommendation, familiarity with which is assumed. (*See* 9/1/10 R&R, at 3-12, 15-18, 31-34.) Essentially, Plaintiff alleges that, in late 2008, Croom wrote a false misbehavior report against another inmate, Edward Chaez ("Chaez"), leading Plaintiff to testify and to write a grievance against Croom, on Chaez's behalf. Plaintiff alleges that, on February 15, 2009, in retaliation for his involvement in that matter, Croom wrote a false misbehavior report against *Plaintiff* and stole the legal and other papers that Plaintiff was about to present at a February 17 parole hearing. In this Court's earlier Report and Recommendation, the Court found that Plaintiff had no standing to challenge Croom's conduct against Chaez (a point which Plaintiff now accepts (*see* Am. Compl., ¶ 6[2])), and that Plaintiff had not exhausted his claims relating to Croom's alleged retaliation against him. On the issue of exhaustion, Plaintiff previously conceded that he had not filed any grievance regarding the alleged retaliation, but argued that he had been afraid to pursue a grievance and that letters he wrote to the facility Superintendent and

---

failure to exhaust his administrative remedies, the Court considers whether nonexhaustion is clear from the face of the complaint." *Kasiem v. Switz*, 756 F. Supp. 2d 570, 574 (S.D.N.Y. Dec. 20, 2010). "If nonexhaustion is clear, the motion to dismiss should be granted." *Id.* (citing *Shaw v. City of New York*, No. 08 Civ. 3997 (SHS) (JCF), 2008 U.S. Dist. LEXIS 87331 (S.D.N.Y. Apr. 21, 2009)).

[2] Plaintiff has utilized a form pleading to prepare his Amended Complaint, but he has attached a separate handwritten section, entitled "Facts," to supplement Section II(D) of the form. The paragraph numbers referenced herein are to that "Facts" section.

the Deputy Commissioner should be deemed sufficient to satisfy the exhaustion requirements. The Court rejected those arguments.  (*See* 9/1/10 R&R, at 32-34.)

In his Amended Complaint, Plaintiff once again concedes that he filed no grievances regarding Croom's alleged retaliatory preparation of a false misbehavior report or his alleged theft of Plaintiff's legal papers.[3]  Rather, Plaintiff argues that he was led by the Central Office Review Committee ("CORC") to believe that filing a grievance would not be the appropriate course to follow, in the circumstances presented.  Specifically, Plaintiff explains that, prior to Croom's alleged misconduct towards him, Plaintiff had filed a grievance against another correctional officer (defendant Dawley), alleging that Dawley had filed a false misbehavior report against him.  In his Amended Complaint, Plaintiff quotes the response he received from the CORC with respect to that grievance:

> The grievant is further <u>advised</u> to address any <u>future</u> similar concern of staff misconduct to an area supervisor, at the time, for the most expeditious means of resolution. . . .  CORC notes that a <u>disciplinary hearing</u> may be appealed in accordance with 7 NYCRR, Chapter V and that this appeal mechanism affords the opportunity to remedy any factual or procedural errors in a disciplinary report. . . .  CORC notes that Directive 4040, Section 701.1, states, in part, that [the]  grievances program is not intended to support an adversary process. . . .  An inmate may pursue a complaint that a repr[]isal occurred through the grievance mechanism.

---

[3] Although, in Section IV(E) of his form Amended Complaint, Plaintiff states that he filed grievances regarding "all" of the claims he is asserting in this action, he then immediately notes an "exception" with respect his complaints about the alleged misconduct of Croom.  (*See* Am. Compl., § IV(E)(3) ("In all my grievances, *with the exception of the 5th event* [*i.e.,* the "event" in which Croom allegedly wrote a false report and stole Plaintiff's papers], I first appealed to the Superintendent, then I appealed it to the CORC.") (emphasis added).)  Indeed, Plaintiff does not set out any facts in his Amended Complaint to suggest that he actually did file a grievance regarding Croom's conduct towards him, and, in Section IV(F) of the Amended Complaint and the attached pages that follow, Plaintiff provides an explanation for the "reasons why [he] did not file [such] a grievance."

(Am. Compl., § III(E)(2) (attachment 4-4) (underlining added by Plaintiff).)  Given that Plaintiff was subjected to a disciplinary hearing on the allegedly false charges made against him by Croom and was found guilty of those charges, Plaintiff purportedly believed that the above statements of the CORC, although made in relation to his earlier complaints about Dawley, would apply with equal force to his complaints against Croom.  Plaintiff states that he understood the CORC's statement to mean that, following his disciplinary hearing on the charges made against him by Croom, Plaintiff could only pursue his complaints about Croom's behavior by (1) contacting Croom's area supervisor(s), or (2) appealing from the disciplinary determination, and that he pursued both of these avenues.  (*See id.*, § IV(F) (attachment 5-5).)  Relying on *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), Plaintiff argues in opposition to Croom's motion to dismiss that if, to the contrary, he was required to file a formal grievance against Croom in order to exhaust his claims, then that requirement should be excused by his reasonable reliance on what he understood to be the CORC's advice.  (*See* Pl. Opp., ¶ 12.)

In *Giano*, the plaintiff inmate complained that, in retaliation for his prior protected conduct, correctional officers had "tampered with his urine samples and falsified some of the documentary and testimonial evidence used against [him] at . . . disciplinary hearings."  *Giano*, 380 F.3d at 674.  The plaintiff raised these complaints in the context of a disciplinary hearing, and he also appealed from the adverse determination of that hearing, but he did not raise his complaints in any separate grievance.  *See id.* at 673-74.  Rather, he asserted his understanding that his complaints were not grievable, based on DOCS regulation 7 N.Y.C.C.R.R. § 701.3(e)

and DOCS Directive 4040.[4]  *See id.* at 678-79.  The Second Circuit found that the plaintiff's interpretation of the regulations "was hardly unreasonable," *id.* at 679, and that his failure to exhaust his available administrative remedies before filing suit "was justified by his reasonable belief that DOCS regulations foreclosed such recourse," *id.* at 678.

While Plaintiff contends that *Giano* is "square[ly] on point with [his] case" (Pl. Opp. to Croom Mtn., ¶ 12), it actually is not.  For one thing, the CORC response on which Plaintiff claims to have relied, in this case, explicitly stated that an inmate could use the "grievance mechanism" to "pursue a complaint that a repr[]isal occurred."  (Am. Compl., § IV(E)(2) (attachment 4-4).)  Moreover, even if Plaintiff was confused by the CORC's response to his earlier grievance, and even if he was reasonably led to believe that the appropriate avenues to exhaust his retaliation claims against Croom were through writing to Croom's supervisors and/or appealing from the disciplinary determination, Plaintiff did not follow through with respect to either of those two approaches.

### 1.  Plaintiff's Letters to Croom's "Supervisors"

As previously described in this Court's prior Report and Recommendation (*see* 9/1/10 R&R, at 11-12), Plaintiff alleges that, on February 19, 2009, and again on March 5, 2009, he wrote directly to the Superintendent of the facility (defendant William Connolly) and Deputy

---

[4]  Section 701.3(e) provided that "the individual decisions or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable."  *Giano*, 380 F.3d at 678 (quoting 7 N.Y.C.C.R.R. § 701.3(e)(1) (internal quotation marks omitted)).  Similarly, DOCS Directive 4040 provided that "[t]he individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.  Specifically, the individual decisions or dispositions of the following are not grievable: . . . disciplinary proceedings."  *Id.* (quoting DOCS Directive 4040).

Commissioner Lucien J. Leclaire, Jr., to complain about Croom's alleged misconduct.  Although it seems doubtful that either of these individuals could be appropriately characterized as Croom's "area supervisor," the Court need not resolve that question.  As previously explained, the mere writing of these letters cannot be deemed sufficient for Plaintiff to have exhausted his claims. Even if the first of these letters could have substituted for filing a grievance, Plaintiff failed to wait for a response before filing this lawsuit on March 3, 2009.  Certainly, the second letter cannot suffice for pre-suit exhaustion purposes, as Plaintiff never even sent it until after this suit was commenced.  Thus, as this Court has already found, Plaintiff cannot rely on these letters to satisfy the PLRA exhaustion requirement, or to excuse him from having failed to file a grievance regarding Croom's challenged misconduct.

### 2.      Appeal from Disciplinary Hearing Determination

As for appealing from his disciplinary determination, Plaintiff now seems to allege that, although he timely filed an appeal from his disciplinary hearing, he was "precluded from *properly* appealing," as he was "denied access to . . law library materials."  (Am. Compl., § IV(F) (attachment 5-5) (emphasis added).)  Plaintiff states that he "addressed [his] complaints in an administrative appeal form 217B" (*id.*), a copy of which he has attached to his Amended Complaint.  On this form, which is undated, Plaintiff apparently wrote, in relevant part:

> On Friday, February 27, 2009, I was found guilty on all charges . . . .
>
> I was given this appeal form with only 72 hours to appeal. On Saturday February 28, 2009, I submitted a law library request form so that I can be provided with legal materials . . . and I requested writing supplies at least 40 pages of lined paper.  I indicated that this was for appealing a TIER II disposition and I only had 72 hours.  I requested two forms for "Requesting Hearing Tape" as well.  I did not receive this request.  On Sunday, March 1, 2009, I made the same request and I did not receive anything.

9

> Therefore, how can I defend myself?  I am being
> irreparably harm[ed] by not being provide[d] any access to the law
> library and its complete services.  I humbly request to please annul
> these false charges because this was all done as retaliation against
> me, and now I am being deprived of my rights to even appeal.
> Please transfer me out of here.  My rights and my safety is at risk.
> This is all I can appeal.  Thank you.

(*See* Am. Compl., ¶ 23 and attached document that follows (Appeal Form to the Superintendent

Violation (Tier I) and Disciplinary Hearings (Tier II), dated Feb. 17, 2011 ("Appeal Form")).)

It is unclear whether Plaintiff actually submitted this appeal form, as Croom's counsel

has submitted a copy of what counsel claims to be a computer printout of Plaintiff's disciplinary

history, which contains no reference to the appeal.  (*See* Reply Declaration of Steven N.

Schulman, dated June 6, 2011 (Dkt. 77), ¶ 2, and Ex. A.)  Yet even assuming that Plaintiff did, in

fact, submit the appeal form, he could not have done so earlier than March 1, 2009, as the

information that he apparently wrote on the form refers to a request for materials, made on that

date.  (*See* Appeal Form.)  As Croom points out, the Superintendent would have had 15 days to

render a decision, after receipt of the appeal (*see* Croom Mem., at 15 (citing 7 N.Y.C.C.R.R.

§ 253.8)), and Plaintiff does not claim to have received any decision on his appeal by March 3,

2009, when he went ahead and filed this action.  Thus, once again, even assuming that Plaintiff

attempted to exhaust his claims against Croom through an appeal from the disposition of

Plaintiff's disciplinary hearing, Plaintiff failed to wait for the completion of the appeal process

prior to filing his Complaint in this Court, rendering his attempt at exhaustion inadequate.  *See*

*Mitchell v. Carriero*, No. 6:08–CV–06270 CJS, 2011 U.S. Dist. LEXIS 63321, at *8 (W.D.N.Y.

June 15, 2011) ("Even though Plaintiff believed his appeal would be denied, he was required

under § 1997e(a) [of the PLRA] to file an appeal and wait for a response before his

administrative remedies could be considered exhausted"); *Mitchell v. Igoe*, No. 9:06-cv-00186

(GLS/DEP), 2009 U.S. Dist. LEXIS 88505, at *21-22 (N.D.N.Y. Sept. 25, 2009) (stating that

"plaintiff's complaint would be subject to dismissal since complete exhaustion, including appeal

to and disposition by the CORC, must be accomplished prior to commencement of suit") (citing

*Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001)).

   As for the question of whether he was precluded from filing an *adequate* appeal, Plaintiff

alleges that he only had 72 hours to file that appeal, and, within that time, he could not obtain the

necessary access to the prison law library or sufficient writing supplies to prepare a meaningful

submission.  (*See* Am. Compl., Ex. 1, ¶ 22.)  Yet, in the form itself, Plaintiff concedes that he

was given the appeal form prior to the appeal deadline; he obviously was given a pen; and he

was able to write on the form that the charges against him were false and retaliatory (*see id.*).  If,

as Plaintiff suggests, he went ahead and submitted that form, then he appealed the determination

against him, and, regardless of the thoroughness of his arguments, the fact remains that he did

not wait for the outcome of the appeal prior to filing suit.  *See Carriero*, 2011 U.S. Dist. LEXIS

63321, at *8; *Igoe*, 2009 U.S. Dist. LEXIS 88505, at *21-22.  If, on the other hand, Plaintiff did

*not* actually submit the appeal form that he filled out, then he cannot claim exhaustion through

the means of an appeal.  Nor can he be excused from failing to submit a form that he was

apparently given and that he was able to complete, even if he felt unable to advance all of his

arguments.  *See, e.g.*, *Francis v. Zavadill*, No. 06 Civ. 249 (SAS), 2006 U.S. Dist. LEXIS 79323,

at *18 (S.D.N.Y. Oct. 30, 2006) (rejecting as without merit plaintiff's contentions that he had

insufficient time to complete an administrative appeal and insufficient access to law library);

*Bryant v. Williams*, No. 08-CV-778S, 2009 WL 1706592, at *6, 9 (W.D.N.Y. June 17, 2009)

(adopting recommendation that claim be dismissed for failure to exhaust, where plaintiff failed

to seek and file grievance forms, and rejecting plaintiff's arguments that he could not exhaust his claims because he either lacked access to the law library or was unaware of his remedies).

Accordingly, regardless of whether Plaintiff did, or did not, submit the appeal form that he attaches to his Amended Complaint, his action would not have been sufficient to satisfy the PLRA's exhaustion requirement.  In short, Plaintiff cannot be deemed to have exhausted his claims against Croom by any route that he took, and exhaustion cannot be excused on the facts Plaintiff has pleaded.  Plaintiff's claims against Croom should therefore be dismissed.  *See,* e.g., *Kasiem*, 756 F. Supp. 2d at 570.  Further, as Plaintiff has already been given the opportunity to replead, and it is apparent that he cannot demonstrate exhaustion, no further leave to replead should be granted at this point.  *See, e.g., Voorhees v. Goord*, No. 05 Civ. 1407 (KMW) (HBP), 2006 U.S. Dist. LEXIS 48370, at *34-38 (S.D.N.Y. Feb. 24, 2006) (report and recommendation) (recommending dismissal of claims with prejudice for failure to exhaust administrative remedies).

**B.**     **Reasserted Claims Against Other Defendants**

Defendants Connolly, Telesco, Lujan, Mamis, Pelc, and Goord are correct that, to the extent Plaintiff has sought to reassert claims against them, those claims should be stricken, both because the Court did not previously identify any curable defects in Plaintiff's earlier, inadequate allegations against these defendants and because, even if the Court's prior Order were read to permit an amendment, Plaintiff's amended pleading introduces nothing new, with respect to the conduct of these individuals.  (*Compare* Am. Compl. *with* Complaint, dated Apr. 13, 2009 (Dkt. 2).)

I therefore recommend that the motion by these defendants to dismiss the Amended Complaint as against them be granted, as well.

12

## II.     MOTION BY DAWLEY TO DISMISS THE AMENDED COMPLAINT

As against defendant Dawley, the Amended Complaint should be liberally construed to assert a First Amendment retaliation claim, in that Plaintiff alleges that Dawley retaliated against him for filing grievances, which is a protected First Amendment right.  *See Ross v. Westchester County Jail*, No. 10 Civ. 3937 (DLC), 2012 U.S. Dist. LEXIS 3502, at *18 (S.D.N.Y. Jan. 11, 2012) ("The First Amendment protects prisoners from retaliation for the filing of grievances and lawsuits.").  Having finally been served with process, Dawley now moves to dismiss Plaintiff's claims against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure, principally on the ground that Plaintiff's allegations against him do not plausibly state a claim upon which relief can be granted.

Despite Dawley's characterization of his motion, however, both he and Plaintiff rely on documents outside the pleadings in connection with their respective arguments.  Plaintiff, in particular, points to and emphasizes the content of certain reports and memoranda, in his opposition papers.  Some of the documents referenced by the parties may be deemed to be incorporated by reference into the Amended Complaint, or are fairly characterized as integral to Plaintiff's pleading.  It would thus be appropriate for the Court to regard the contents of these documents as supplementing the allegations of the Amended Complaint (*see* Discussion § II(B)(2), *infra*), and to consider them in connection with Dawley's dismissal motion.  Alternatively, as discussed more fully below, it would also be appropriate for the Court to convert Dawley's motion into a motion for summary judgment, as certain of the documents on which the parties rely are evidence of materially undisputed facts that are case-dispositive.  In particular, admissions made by Plaintiff demonstrate that, even if his claim against Dawley were

13

held to be facially sufficient, Plaintiff would not be able to meet his evidentiary burden to prove

retaliation.  (*See* Discussion § II(C)(2), *infra*.)

> A.   **Plaintiff's Allegations Regarding Dawley's Conduct**

The crux of Plaintiff's claim against Dawley is that Dawley wrote a false misbehavior

report about Plaintiff, in retaliation for Plaintiff's having pursued grievances against defendant

Telesco, who was Dawley's supervisor, and against other officers, who were Dawley's

co-workers.  (Am. Compl., ¶ 8; Pl. Opp. to Dawley Mtn., ¶ 3.)  The misbehavior report on which

Plaintiff's claim is premised was previously submitted to the Court by Plaintiff and can fairly be

deemed to be incorporated in the Amended Complaint by reference.  (*See* Am. Compl., ¶ 8.)

Essentially, the report states that, at a certain date and time, while Plaintiff was incarcerated at

the Fishkill Correctional Facility ("Fishkill"), Plaintiff left his housing unit without first "signing

out" on the sign-out board located in that unit.  (*See* Plaintiff's Affirmation, dated May 13, 2010

("5/13/10 Pl. Aff.") (Dkt. 32), Ex. 8 (Inmate Misbehavior Report, dated Dec. 2, 2008 ("12/2/08

Misbehavior Rpt.").)  More specifically, the report states:

> On the above date [December 2, 2008] and time [6:10 p.m.] I
> CO Dawley was instructed by Lieutenant Zehr to send inmate
> R. Salvatierra . . . to walkway Delta upon its opening.  While
> filling out my half hour count sheet and conducting my rounds I
> notice[d] inmate Salvatierra not [i]n the housing unit, nor signed
> out on [the] sign out board.  Upon monitoring the traffic com[]ing
> and going from [the] unit[,] I observed inmate Salvatierra walk
> past the sign out board.  I immediately brought this matter to the
> inmate[']s attention and asked him about his lack of regard for
> sign out procedure.  His reply was, 'oho yeah I[']ll try and
> remember for next time chill CO.'  Area Supervisor notified[,] no
> further action taken.

(12/2/08 Misbehavior Rpt.)

Plaintiff does not dispute that he left his housing unit at the time in question, and he concedes that he did not "sign out," but he nonetheless contends that the report was "false" because Dawley knew exactly where Plaintiff was at the time, as Dawley was the one who had authorized Plaintiff's movement in the first place and, in fact, had ordered him to report to an officer in a different area of the facility.  In his Amended Complaint, Plaintiff alleges that Dawley had previously "walked up to [Plaintiff's] living quarters, and [given him] an authorized movement pass and a direct order to see Li[e]utenant Zehr."  (Am. Compl., ¶ 8; *see also* Pl. Opp. to Dawley Mtn., ¶ 4 ("Defendant C.O. Dawley knew, or should have known, that on December 2, 2008 at approximately 6:00 p.m. he received a called from Lt. Zehr to authorize my movement (by giving me a direct order) to go see Lt. Zehr at Delta.").)  Plaintiff further alleges that Dawley "knew where [Plaintiff] was going and wrote it in the logbook and [Dawley's] count-list."  (Am. Compl., ¶ 8.)

The events allegedly leading up to Plaintiff's absence from his housing unit are further set out by Plaintiff in a grievance he claims to have filed against Dawley, prior to commencing this action.  As with the misbehavior report itself, Plaintiff had provided a copy of that grievance to the Court, in connection with prior motion practice.  (*See* 5/13/10 Pl. Aff., Ex. 4 (Inmate Grievance Complaint, dated Dec. 5, 2008 ("12/5/08 Grievance")).)  In his grievance, Plaintiff asserted that, in leaving his housing unit to report to Lieutenant Zehr ("Zehr"), as directed by Dawley, Plaintiff had stopped by Dawley's office to "sign out," but was unable to do so at that time, because the office door was locked.  (*See* 12/5/08 Grievance, ¶ 3.)  Believing that he had sufficient authorization to leave and that Zehr was already waiting for him, Plaintiff decided not to wait to sign out, and instead proceeded to his meeting with Zehr without signing out.  (*Id.*, ¶ 4;

15

*see also id.*, ¶ 5 (containing admission by Plaintiff that he later told Dawley, "'I did not sign out'").)

Plaintiff claims that Dawley wrote the misbehavior report not because it was warranted, but "because he knew [Plaintiff] had just come back from the Grievance Investigation [Plaintiff] had filed against . . . Telesco and [the others]." (Am. Compl., ¶ 8.) In particular, Plaintiff contends that Dawley wrote the misbehavior report "with the ill intentions to get [Plaintiff] to work in . . . [the] area" of the facility where defendants Montgomery, Croom, and Telesco worked. (Pl. Opp. to Dawley Mtn., ¶ 11.) As a consequence of the misbehavior report, Plaintiff was charged with, and found guilty of, a "movement violation,"[5] and he was then penalized with a "7-day work detail." (Pl. Opp. To Dawley Mtn., ¶ 11.) A fair reading of the Amended Complaint is that Plaintiff was afraid to report to that work detail, as it indeed would have been "in the same area . . . and [on the same] shift" as Plaintiff's fellow inmate, Chaez, had been working, when Chaez had allegedly suffered retaliation. (Am. Compl., ¶ 9.) Given that Plaintiff had written a grievance on Chaez's behalf (*see* Discussion § I(A), *supra*), Plaintiff apparently believed that the same officers might now cause him harm (*see* Am. Compl., ¶ 9 ("I was now afraid that I was going to get 'set up'"); *see also id.*, ¶ 10 (alleging that Plaintiff wrote letters to the Fishkill Superintendent and a supervisor, "indicating my fear of being retaliated [against] if I were to appear for that 7 days work detail")).

---

[5] As a result of Dawley's misbehavior report, Plaintiff was charged with being "out of place," in violation of Disciplinary Rule 109.10, 7 N.Y.C.C.R.R. § 270.2(B) (prohibiting an inmate from "being out of place in any area of the facility"), and with a "movement regulation violation" under Disciplinary Rule 109.12, 7 N.Y.C.C.R.R. § 270.2(B) (requiring inmates to "follow all facility regulations and staff directions relating to movement within the facility"). (*See* 5/13/10 Pl. Aff., Ex. 10 (Disposition of charges, dated Dec. 3, 2008 ("Disposition of Charges")). As the "out of place charge" was ultimately dismissed, however, Plaintiff only faced a penalty based on the "movement regulation violation" charge. (*See id.*; *see also* 5/13/10 Pl. Aff., Ex. 4 (Denial of Grievance by CORC, dated Jan. 28, 2009).)

Plaintiff alleges that the work assignment he was given made him so "nervous" that, after receiving the assignment, he was "afraid to walk alone in the lone corridors," and that he thus "rush[ed] to catch up" with others, causing him to fall down a stairwell and injure his back.  (*Id.*, ¶ 9.)  It appears that, as a result of his injury, Plaintiff never actually served the assigned work detail, at least not in the originally-assigned location.  (*See id.*; *see also* Pl. Opp. to Dawley Mtn., ¶ 12 (stating that Plaintiff "was not able to work at that location because . . . [he] had experience[d] an accident).)[6]

**B.    Applicable Legal Standards**

**1.    Motion To Dismiss, under Rule 12(b)(6)**

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are

---

[6] It is unclear whether Plaintiff is seeking to hold Dawley responsible for his back injury.

held to a less stringent standard than the pleadings drafted by lawyers). At the same time,

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to defeat a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337

(2d Cir. 2006) (citation omitted). Even plaintiffs who are proceeding *pro se* must comply with

any relevant procedural and substantive rules, and, to survive a motion to dismiss, a *pro se*

complaint, like any other complaint, "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *Bisson v.*

*Martin Luther King Jr. Health Clinic*, No. 07-5416, 2008 U.S. App. LEXIS 23977, at *2 (2d Cir.

Nov. 20, 2008). A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

The mandate that a *pro se* plaintiff's complaint be construed liberally makes it

appropriate for the court to consider the factual allegations in the plaintiff's opposition materials

to supplement the allegations in the complaint. *See Burgess v. Goord*, No. 98 Civ. 2077 (SAS),

1999 U.S. Dist. LEXIS 611, at *2 n.1 (S.D.N.Y. Jan 26, 1999) ("In general, a court may not look

outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate

to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's

additional materials, such as his opposition memorandum.") (internal citation and quotation

marks); *see also Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). In addition, in ruling on a

motion to dismiss, a court may consider documents attached to the complaint as exhibits and

incorporated in the complaint by reference. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood*

*Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citation omitted);

*Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).  The court may also consider documents that the plaintiff "either possessed or knew about and upon which [he] relied in bringing . . . suit."  *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotations omitted)); *Magnifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (recognizing that the court can consider documents on which plaintiff relied in bringing suit).

### 2.    Conversion to Motion for Summary Judgment, under Rule 56

Where a party moving to dismiss a complaint under Rule 12(b)(6) submits and relies on evidence that should be considered outside the complaint, the court "must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'"  *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d) (stating that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

Where the court finds it appropriate to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  To ensure that *pro se* parties are provided with such an opportunity, Local Civil Rule 12.1 requires that "[a] represented party moving to dismiss or for judgment on the pleadings against a party proceeding pro se, who refers in support of the motion to matters outside the pleadings as

described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file . . . [a] notice with the full text of Fed. R. Civ. P. 56 attached at the time the motion is served."[7]

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Accordingly, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Nonetheless, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading," but " must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). This means that "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), but, rather, must present "significant probative evidence tending to support the complaint." *Smith v.*

---

[7] In connection with his motion, Dawley provided Plaintiff with the required notice pursuant to Local Civil Rule 12.1, specifically warning Plaintiff "that the Court may treat this motion as a motion for summary" and informing Plaintiff that, pursuant to Rule 56, he "may NOT oppose the defendant's motion simply by relying upon the allegations in [his] complaint . . . [but] [r]ather . . . must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support [his] claim." (Local Rule 12.1 Notice to Pro Se Litigant Opposing Rule 12 Motion to Dismiss Supported by Matters Outside of the Pleadings, dated July 1, 2011 (Dkt. 80).)

*Menifee*, No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, at *9 (S.D.N.Y. Mar. 25, 2002)

(citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968).  "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

In sum, on a summary judgment motion, the Court "cannot try issues of fact; it can only

determine whether there are issues to be tried" on the evidence presented.  *Am. Mfrs. Mut. Ins.

Co. v. Am. Broad.-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v.

Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995).  Where there is no genuine issue of material

fact, viewing the evidence in the light most favorable to the nonmoving party, summary

judgment is appropriate.  *See Liberty Lobby*, 477 U.S. at 248.

### C.   Plaintiff's Retaliation Claim Against Dawley

#### 1.   Sufficiency of Plaintiff's Allegations

A well-pleaded allegation that a correctional officer wrote a false misbehavior report

regarding an inmate, in retaliation for the inmate's exercising a constitutionally-protected right

(such as the First Amendment right to file grievances), states a claim under 42 U.S.C. § 1983.

*Gayle v. Gonya*, 313 F.3d 677, 682 (2d Cir. 2002).  "To state a claim for First Amendment

retaliation under Section 1983, a plaintiff must allege:  (1) that the speech or conduct at issue

was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there

was a causal connection between the protected speech and the adverse action."  *Holmes v.

Poskanzer*, 342 Fed. App'x 651, 653 (2d Cir. 2009) (internal quotation marks and citation

omitted).

In this case, Plaintiff's Amended Complaint adequately meets the first of these

requirements, as Plaintiff plainly pleads that he engaged in "protected conduct" by pursuing

21

grievances against correctional officers.  *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *see also Ross*, 2012 U.S. Dist. LEXIS 3502, at *18.

As for the second requirement, Dawley argues on his motion that the punishment imposed on Plaintiff was not sufficiently severe to be deemed an "adverse action."  (*See* Dawley Mem., at 10-11.)  Dawley, however, cites little case law to support this argument, and the one case on which he particularly relies, *Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 WL 1289256 (S.D.N.Y. May 12, 2006), found only that a temporary loss of privileges did not rise to the level of adverse action, *id.* at *7.  In this case, where Plaintiff alleges that Dawley wrote a false misbehavior report about Plaintiff that resulted in a sanction of a work detail, Plaintiff has gone farther to satisfy the "adverse action" requirement.  In the prison context, action is considered to be "adverse" where it is likely to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Davis v. Goord*, 320 F. 3d 346, 353 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (citation omitted) (internal quotation marks omitted)).  While it is true, as Dawley notes, that "[p]risoners may be required to tolerate more than . . . average citizens, before a [retaliatory] action taken against them is considered adverse" (Dawley Mem., at 10 (citing *Dawes*, 239 F.3d at 493)), the imposition of a "less desirable work assignment" can satisfy the "adverse action" requirement, *Chavis v. Struebel*, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004).[8]

---

[8] It is possible that Plaintiff suffered no cognizable deprivation of his rights, if, as suggested by his opposition papers, he was never actually made to serve the imposed work detail because of his back injury.  (*See* Pl. Opp. to Dawley Mtn., ¶ 12; *see also Gayle v. Lucas*, 133 F. Supp. 2d 266, 271 (S.D.N.Y. 2001) (finding no cognizable deprivation where disciplinary charge against plaintiff inmate was reversed before any penalty was imposed).)  This is not clear, however, from the face of Plaintiff's allegations, and, based on the evidence submitted by the

Plaintiff, however, cannot satisfy the third pleading requirement for a retaliation claim, *i.e.,* that he allege a "causal connection" between his protected speech and the adverse action taken against him.  To plead the requisite "causal connection," so as to survive a Rule 12(b)(6) motion, a plaintiff must allege facts "sufficient to support the inference that the speech played a substantial part in the adverse action," *Davis*, 320 F.3d at 354 (citation omitted), "that is to say, the adverse employment action would not have been taken absent the employee's protected speech," *Geiger v. Town of Greece,* No. 07-CV-6066 CJS, 2007 U.S. Dist. LEXIS 87466, at *24 (W.D.N.Y. Sept. 4, 2007) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *Roper v. Hynes,* No. 05 Civ. 7664 (WHP), 2006 U.S. Dist. LEXIS 69128, at *24-26 (S.D.N.Y. Sept. 27, 2006) (same).

In this case, Plaintiff has admitted the essential fact stated in the misbehavior report – that he did not "sign out" before leaving his housing unit.  Further, he admitted this in a document (his grievance against Dawley) that he cites in his Amended Complaint (*see* Am. Compl., ¶ 9) and that may thus be considered by the Court on Dawley's Rule 12(b)(6) motion.  Where a prisoner's own allegations include an admission of the conduct alleged in a misbehavior report, he cannot plausibly plead that the report would not have been written "absent the employee's protected speech"; for this reason, he cannot state a retaliation claim and any such claim should be dismissed.  *See, e.g.*, *Phillips v. Roy*, No. 9:08-CV-878 (FJS/ATB),

---

parties, it may be that Plaintiff was given an alternate sanction of a loss of recreation.  (*See* Disposition of Charges (stating that, if Plaintiff were unable to complete the imposed work detail, then he would be given, as an alternative, a 13-day "loss of all recreation").)  Yet, as neither the pleadings nor the presented evidentiary record directly address the question of what penalty, if any, Plaintiff actually suffered, the Court cannot recommend dismissal, at this juncture, on the basis that Plaintiff either suffered no penalty, or a penalty that was insufficiently severe to justify a constitutional claim.

2011 U.S. Dist. LEXIS 96615, at *12 (N.D.N.Y. Aug. 29, 2011) (dismissing retaliation claim under Rule 12(b)(6) where plaintiff "admitted performing the conduct which resulted in the misbehavior report"); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 207 (N.D.N.Y. 2009) (dismissing retaliation claim on the pleadings where plaintiff admitted conduct charged in misbehavior report); *cf. Grossi v. City of New York*, No. 08–CV–1083, 2009 WL 4456307, at *8 (E.D.N.Y. Nov. 30, 2009) (dismissing retaliation claim for lack of plausibility where plaintiffs' pleading indicated that there was an alternate, non-retaliatory motive for the defendant's conduct) (adopting report and recommendation).

Accordingly, I recommend that Dawley's motion to dismiss Plaintiff's retaliation claim against him be granted.

### 2. Viability of Claim Based on Undisputed Evidence

Even if this Court were to determine that it should not consider Plaintiff's admission of misconduct in the context of a Rule 12(b)(6) motion, the Court may still opt to convert the motion to one for summary judgment and then consider Plaintiff's admission in that context.  In his motion, Dawley has certainly relied on documentary evidence (including, *inter alia,* the misbehavior report, Plaintiff's grievance, and the posted policy regarding prisoner movement in the Fishkill facility (*see, e.g.*, Dawley Mem., at 7)); Plaintiff has received notice that Dawley's motion might be converted to a motion for summary judgment and that he should therefore provide the Court with evidence in admissible form (*see* n.7, *supra*); and, while the parties have not yet developed a full discovery record, the fact of Plaintiff's failure to sign out of his unit is plainly undisputed (*see* 12/5/08 Grievance, ¶ 5 ("I did not sign out")).  Based on that undisputed material fact, even if Plaintiff's retaliation claim against Dawley could survive facial scrutiny under Rule 12(b)(6), Plaintiff's claim would still be subject to dismissal under Rule 56.

To succeed at trial on a prisoner retaliation claim, the plaintiff must "bear[] the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison official['s] decision to discipline the plaintiff." *Gayle*, 313 F.3d at 682 (internal quotation marks and citation omitted).  Assuming the plaintiff meets this burden, "[t]he burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation." *Id.*; *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (noting that, "in cases in which state action is motivated by both proper and improper reasons, the action may be sustained if it would have been taken even in the absence of the improper reason" (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 272, 287 (1977))).

Where the allegation that forms the basis of a plaintiff's retaliation claim is that he was the subject of a false misbehavior report, the defendant correctional officer can meet his burden of showing that the plaintiff would have received the same punishment, regardless of any retaliatory motive, "by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'" *Gayle*, 313 F.3d at 682 (quoting *Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.) (*per curiam*), *cert. denied*, 525 U.S. 907 (1998)); *Lowrance*, 20 F.3d at 535); *accord Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003).  Where the plaintiff has actually admitted the charged conduct, dismissal of the plaintiff's retaliation claim on summary judgment is appropriate because the court may then presume that the report "would have been issued on proper grounds alone," and thus there is no constitutional violation.  *Lowrance*, 20 F.3d at 534-35; *see also id.* at 535 (noting that "the conclusion that state action would have been taken in the absence of improper motives is 'readily drawn in the context of prison administration'" (citation omitted)).

25

Adopting the reasoning of *Lowrance*, courts within this circuit have consistently granted summary judgment in defendants' favor, on facts similar to those presented here.  *See, e.g.*, *Gayle*, 133 F. Supp. 2d at 267, 271-72 (after denying Rule 12(b)(6) motion to dismiss retaliation claim, granting summary judgment to defendants, based on plaintiff's admission that he had failed to obey direct orders, as alleged in misbehavior reports); *Emerson v. New York State Dep't of Correctional Services,* No. 9:08-CV-824 (NAM/ATB), 2011 U.S. Dist. LEXIS 116377, at *85 (N.D.N.Y. Sept. 9, 2011) (report and recommendation) ("If there is no dispute that plaintiff, in fact, committed the most serious conduct charged in the misbehavior report, even assuming retaliatory motive, Defendants would be entitled to summary judgment because there were proper, non-retaliatory reasons for Plaintiff's punishment") (citing *Carl v. Griffin*, No. 08 Civ. 4981, 2011 U.S. Dist. LEXIS 20639, at *17-18 (S.D.N.Y. Mar. 2, 2011) (internal quotation marks, brackets, and further citation omitted)), *adopted by* 2011 U.S. Dist. LEXIS 112521 (Sept. 30, 2011); *Martin v. Mitchell,* No. 92-CV-716, 1994 U.S. Dist. LEXIS 20800, at *26 (N.D.N.Y. Dec. 8, 1994) (report and recommendation) (recommending grant of summary judgment where hearing transcript contained admissions by plaintiff that showed misbehavior report was not "false"), *adopted by* 1995 U.S. Dist. LEXIS 19006 (Nov. 24, 1995); *see also Cagle v. Gravlin,* No. 9:09-CV-0648 (FJS/GHL), 2010 U.S. Dist LEXIS 51252, at * 12 (N.D.N.Y. Apr. 29, 2010) (report and recommendation) (finding that, even if defendants had retaliatory motives for issuing a misbehavior report, their action would be upheld, where the plaintiff admitted he engaged in the cited misconduct), *adopted by* 2010 U.S. Dist. LEXIS 51278 (May 25, 2010); *Withrow v. Taylor*, No. 9:05-CV-1129 (DNH/GJD), 2007 U.S. Dist. LEXIS 98155, at *44 (N.D.N.Y. Sept. 28, 2007) (report and recommendation) (recommending that summary judgment be granted in defendants' favor where it was "clear from the disciplinary

transcript that defendant['s] . . . misbehavior report "was not 'false' by plaintiff's own admissions"), *adopted by* 2007 U.S. Dist. LEXIS 81867 (Nov. 5, 2007).

Although Plaintiff argues that his failure to sign out "was not [a] serious disciplinary action that threatened the safety and the security of the staff, other inmates or [Plaintiff]" (Pl. Opp. to Dawley Mt., ¶ 8), Plaintiff's views in this regard are beside the point.  "[P]rison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance*, 20 F.3d at 535 (internal quotation marks and citation omitted).  In this instance, the disciplinary rule that Plaintiff was found to have violated required inmates to "follow all facility regulations and staff directions relating to movement within the facility," Disciplinary Rule 109.12, 7 N.Y.C.C.R.R. § 270.2(B).  There is no reason for this Court to question the legitimacy of such a rule.

Further, although Plaintiff now asserts in his opposition papers that the sign-out procedure was "permissive[,] not mandatory" (Pl. Opp. to Dawley Mtn., ¶ 10), this argument cannot save his claim.  Plaintiff bases the argument on a Fishkill memorandum, which Plaintiff has submitted to the Court (*see* 5/13/10 Pl. Aff., Ex. 9 (Fishkill Interdepartmental Communication, dated Sept. 23, 2008 ("9/23/08 Mem."))), but which, in his papers, Plaintiff quotes only in part.  Specifically, Plaintiff quotes this memorandum as stating that "inmates *may* sign out to their destination on the sign out board" and that "inmates *may* continue to sign out until the walkway is open and the announcement is made on the Unit."  (Pl. Opp. to Dawley Mtn., ¶ 11 (emphasis added).)  The actual memorandum, however, shows that Plaintiff has truncated the operative language.  The memorandum does not begin by stating that "inmates may sign out . . . ."  Rather, it states the following, in relevant part:

> In order to allow for an orderly opening of the walkway
> and inmate movement throughout the facility, the following
> procedure is in effect:
>
>> Fifteen minutes prior to the opening of the walkway,
>> inmates may sign out to their destination on the sign out
>> board.
>>
>> Officers may begin writing passes and continue doing so
>> until all inmates who have signed out receive their passes.
>>
>> Inmates may continue to sign out until the walkway is open
>> and the announcement is made on the Unit.

( 9/23/08 Mem.)  In context, it is clear that this memorandum relates to the *timing* of when

inmates may sign out of their units, not to the mandatory or permissive nature of the procedure

itself.  Indeed, in upholding Plaintiff's "movement violation charge," the CORC confirmed that

the sign-out procedures were mandatory by stating that a "pass is only good for movement from

point to point and does not relieve [an inmate] of the requirement to sign off the unit."  (5/13/10

Pl. Aff., Ex. 4 (Denial of Grievance by CORC, dated Jan. 28, 2009).)  Accordingly, Plaintiff's

proffered construction – that the sign-out procedure was merely optional – does not raise a

genuine, triable issue of fact.  *See Odom v. Dixion*, No. 04-CV-889F, 2008 WL 466255, at *8, 10

(W.D.N.Y. Feb. 15, 2008) (dismissing prisoner's Section 1983 claim on summary judgment

where plain reading of plaintiff's exhibit failed to raise a triable issue of fact); *see also Scotto*,

143 F.3d at 114 ("[t]he non-moving party may not rely on conclusory allegations or

unsubstantiated speculation") (internal citation omitted).

As a general matter, "courts must approach prisoner claims of retaliation with skepticism

and particular care," *Dawes*, 239 F.3d at 491, in light of the "near inevitability of decisions and

actions by prison officials to which prisoners will take exception and the ease with which these

claims of retaliation may be fabricated," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *see*

*also Graham*, 89 F.3d at 79 (noting that "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike" (citation omitted)).  In this case, regardless of whether Dawley may have acted with any retaliatory motive, undisputed evidence shows that there was a non-retaliatory basis for the misbehavior report, which accused Plaintiff of the conduct he admits.  For this reason, Plaintiff cannot prevail on his asserted claim against Dawley.  *See Lowrance*, 20 F.3d at 534-35 (affirming dismissal of retaliation claim on summary judgment where plaintiff "admitted to engaging in the conduct that formed the basis of the misbehavior report"); *see also, e.g.*, *Gayle*, 133 F. Supp. 2d at 271-72 (granting summary judgment to defendants, based on plaintiff's admission that he had failed to obey direct orders, as alleged in misbehavior reports).

Accordingly, should the Court determine that Plaintiff's admission of his misconduct is best addressed as an evidentiary, rather than a pleading matter, then I recommend that Dawley's motion be converted to a motion for summary judgment under Rule 56, and that Dawley then be granted summary judgment on Plaintiff's claim against him.[9]

---

[9] As Plaintiff's claim against Dawley should be dismissed for the reasons discussed above, the Court need not reach the issues of sovereign immunity and qualified immunity. Nonetheless, the Court notes that, to the extent that Plaintiff has sued Dawley in his official capacity, Dawley would be entitled to sovereign immunity on Plaintiff's claim.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 70-71 (1989).  Moreover, Dawley would be entitled to qualified immunity in this case, as it is "objectively reasonable" for a correctional officer to believe that issuing a materially true misbehavior report about an inmate would not violate statutory or constitutional law.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that qualified immunity insulates government officials from personal liability when they perform discretionary duties pursuant to their official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996) (noting that "[a] qualified immunity defense is established if . . . it was objectively reasonable for the defendant to believe that his action did not violate [statutory or constitutional] law").

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend:

    (1)    that the motion to dismiss by Croom (and the other defendants who joined Croom on that motion) (Dkt. 62) be granted, with prejudice; and

    (2)    that the motion to dismiss by Dawley (Dkt. 78) be granted, with prejudice; or, alternatively, that the motion be converted to one for summary judgment and then granted in Dawley's favor, with prejudice.

If the Court adopts these recommendations, then this case should proceed with discovery solely with respect to Plaintiff's surviving claim against Montgomery.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United States Courthouse, 500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Stein.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson,* 714 F.2d 234, 237-38 (2d Cir. 1983).  If Plaintiff does not have access to cases cited

herein that are electronically reported, he may request copies from Defendant's counsel.  *See*

Local Civ. R. 7.2.

Dated: New York, New York
       February 29, 2012

Respectfully Submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Sidney H. Stein, U.S.D.J.

Mr. Richard Salvatierra
723 W. 177th Street, Apt. A-1
New York, NY 10033

Steven N. Schulman, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271